CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    jonah.ross@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:25-cr-00109 HSG |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date:   July 8, 2026 |
| LUIS LOPEZ, | Time:  2:00 p.m. |
| Defendant. | |

## INTRODUCTION

Defendant Luis Lopez, a man with considerable criminal history including three prior felony convictions for unlawfully possessing firearms, possessed three semiautomatic pistols, each equipped with a high-capacity magazine and loaded with ammunition.  Lopez has pleaded guilty in the instant case to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

For the reasons set forth below, the government requests that the Court sentence Lopez to 84 months imprisonment, which represents the low end of the guidelines range, and a three-year term of supervised release.

/ / /

/ / /

UNITED STATES' SENTENCING MEMO.      1
4:25-cr-00109 HSG

## BACKGROUND

**A. Offense Conduct**

Lopez possessed loaded firearms on three separate occasions.  Each firearm had previously traveled across interstate and/or foreign borders, and prior to each possession, Lopez knew that he had been convicted of multiple crimes punishable by more than a year in custody.

1. <u>August 13, 203 – Possession of Loaded Glock Pistol with Extended Magazine While Burglarizing a Marijuana Business (the Crime of Conviction)</u>

On August 13, 2023, at around 3:36 a.m., Oakland Police Department (OPD) officers responded to a report of a burglary of a marijuana business in progress.  *See* Presentence Investigation Report ("PSR") ¶ 7.  As the officer approached the warehouse, multiple suspects exited the building in ski masks.  *Id.*  The OPD officer chased the suspects who attempted to flee through an iron gate.  *Id.*  The officer caught up to one suspect (later identified as Lopez), and forced Lopez to the ground.  *Id.*  Despite Lopez resisting, the officer placed him in handcuffs as suspects continued to run out of the building.  *Id.*

As more officers arrived, police began searching the area for remaining suspects and observed that a white Mercedes and a black Tesla had been abandoned at the scene.  PSR ¶ 8.  Officers conducted a search of both vehicles and located a loaded Glock pistol, inside of the center console of the Mercedes.  *Id.*  Additionally, a Glock model 23 pistol equipped with an extended magazine and a flashlight attached to the pistol's side was located at the corner of the building where Lopez was first observed.  *Id.*  The Glock was loaded with one round in the chamber and an additional 19 rounds in the magazine.  *Id.*  Surveillance video captured Lopez holding a pistol with a flashlight attached while burglarizing the business.  *Id.*  Probabilistic genotyping comparing a DNA swab of the pistol's trigger with a swab from Lopez indicated "very strong support" for the inclusion of Lopez's DNA on the trigger.  *Id.*  (Probabilistic genotyping also showed "strong support" for Lopez's inclusion in a DNA mixture found on the Glock pistol from the Mercedes, but Lopez was not charged for possessing that firearm.  *Id.*)

2. <u>October 14, 2023 – Possession of Loaded Glock Pistol with Extended Magazine While Riding in Vehicle</u>

On October 24, 2023, OPD officers observed Lopez driving in a BMW in Oakland.  PSR ¶ 10. As Lopez stepped out of his vehicle, officers observed a large bulge in his front hoodie pocket.  *Id.*

Police knew Lopez from prior contacts and a records check revealed him to be on active felony probation for a firearm offense. *Id.* Officers continued their surveillance and no longer observed the bulge in his hoodie and believed he had left a firearm inside his vehicle. *Id.* After following Lopez's vehicle, officers waited for the front passenger to exit the vehicle before attempting to approach Lopez. *Id.* At gunpoint, police ordered Lopez out of the vehicle. *Id.* He ignored commands and appeared to be on the phone, but he eventually exited the vehicle. *Id.* On the floorboard behind the front passenger seat, police located a loaded Glock 30 semiautomatic pistol containing a 26-round capacity magazine. *Id.* Twelve days earlier, Lopez had posted to Instagram a video featuring himself holding the same pistol while riding in the passenger seat of a car and smoking. *Id.* at ¶ 11.

   3. July 17, 2024 – Possession of Loaded Glock Pistol with Extended Magazine and Machinegun Conversion Device

On July 17, 2024, federal and local law enforcement agents executed a search warrant at Lopez's residence in Hayward, California. PSR ¶ 13. In a bedroom closet, police located a .45 caliber Glock 30 semiautomatic pistol with an attached "auto sear" device, which converts the pistol to a fully automatic machinegun. *Id.* The firearm was loaded with one round in the chamber and had a large capacity magazine attached to it containing multiple live rounds. *Id.* Also in the bedroom, agents located clothing known to have been worn by Lopez and jewelry he had worn in videos posted to his Instagram account. *Id.* A bracelet with the letters "TRFE"—which stands for "The Real F.E."—was located. F.E. or "Fuck Everybody" is known to be a subset of the Oakland based "ENT" gang. *Id.* Agents also located a pair of pants with stitching that read "fuck everybody," $1,745 in cash, as well as marijuana in jars and packaging materials. *Id.*

**B. Procedural History and Lopez's Performance While Released from Custody**

On April 22, 2025, a three-count Indictment was filed in the Northern District of California, charging the defendant Luis Lopez with three violations of 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm (Counts One, Two, and Three). PSR ¶ 1. On November 19, 2025, Lopez pleaded guilty to Count One of the Indictment. *Id.* at ¶ 2.

Following his indictment, Lopez made his initial appearance on April 28, 2025, and was released on bond over the government's objection. PSR ¶ 3. Among other conditions, Lopez was ordered to

UNITED STATES' SENTENCING MEMO.                3
4:25-cr-00109 HSG

"have no intentional contact, directly or indirectly, with any known member of a gang." Order Setting Conditions of Release and Appearance Bond, dated May 6, 2025.

Lopez repeatedly failed to comply with the terms of his release. On September 8, 2025, pretrial services filed a Violation Memorandum following a new arrest and failure to report contact with law enforcement related to an apparent scheme to fraudulently return merchandise. PSR ¶¶ 5, 49. On December 22, 2025, a Violation Memorandum was filed following multiple violations including: a positive drug test for marijuana and cocaine; defendant's termination from New Bridge's sober living environment; participation in a music video with known gang members, including members of F.E.;[1] and failing to submit to a drug test. *Id.* Lopez was ordered to enter a halfway house following his termination from New Bridge. *Id.* On December 30, 2025, the defendant was terminated from the halfway house following a positive drug test for opioids and was ordered to return to New Bridge for residential treatment placement. *Id.* On January 20, 2026, a Violation Memorandum was filed alleging the defendant was once again terminated from New Bridge due to allegedly making inappropriate sexual comments towards another resident and was taken into custody at the U.S Pretrial Services Office by the U.S. Marshals. *Id.* On January 23, 2026, the defendant appeared for a Bail Violation Hearing and was ordered detained where he has remained. *Id.* At this time, the government also presented evidence of Lopez's continued use of social media—this time on a newly-created account—to publicize his continued association and to communicate with known gang members. *See* Review of Slimerz2L Instagram Oct-Nov 2025, attached as Ex. 1 to the Declaration of Jonah Ross. Lopez later acknowledged he was remanded into custody for communicating with other gang members. PSR ¶ 60.

**C. Criminal History**

Defendant has suffered the following convictions as an adult:

- 2018: Cal. Penal Code § 25850(a) (carrying a loaded firearm), felony;

- 2019: Cal. Pen. Code § 459 second degree (non-residential burglary), felony;

- 2019: Cal. Pen. Code § 29800(a)(1); felon-in-possession of a firearm, felony;

- 2022: Cal. Pen. Code § 29800(a)(1); felon-in-possession of a firearm, felony; and

---

[1] *WeezGotti Ft. $hort200 & Ice Money - 2:35 (ProdByDuce)*, YouTube, November 27, 2025, https://www.youtube.com/watch?v=19wHzfPeKTY&list=RD19wHzfPeKTY&start_radio=1.

- 2023:  Cal. Pen. Code §§ 490.4(a) (organized retail theft) and 459 second degree (non-residential burglary), both felonies.

## ARGUMENT

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).  The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary."  *Carty*, 520 F.3d at 991.  In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

    (4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. Sentencing Guidelines Calculation

As set forth in the PSR and the plea agreement, the Sentencing Guidelines calculations for Defendants offense level is as follows:

|  | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base offense level | § 2K2.1(a)(4)(B) – semiautomatic firearm capable of accepting large capacity magazine and prohibited person | 20 |
| Specific offense characteristics | § 2K2.1(b)(1) – 3-7 firearms | +2 |
|  | § 2K2.1(b)(6)(B) – used or possessed in connection with another felony (possession of narcotics for sale) | +4 |

| Acceptance of responsibility | §3E1.1(a) and (b) | -3 |
|---|---|---|
| Total offense level | | 23 |

PSR ¶¶ 19-29.

The Probation Officer concluded that Lopez's criminal history score is 10, and Lopez therefore falls into Criminal History Category V. *Id.*, ¶ 39. As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 23 and Criminal History Category V is 84-107 months of incarceration. *Id.*, ¶ 81.

**D. The United States' Sentencing Recommendation**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 84 months—the low end of the applicable guidelines range—to be followed by a three-year term of supervised release. Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to provide specific deterrence given Lopez's criminal history and his conduct while on pretrial release, but also to account for relevant mitigating factors.

Lopez's conduct here is dangerous, and his crimes are serious. On August 13, 2023, while committing a separate felony, Lopez held a semiautomatic pistol with an extended magazine. The pistol was loaded with 19 rounds, including a round in the chamber, meaning that while Lopez burglarized the marijuana business, he held a gun that was ready to be fired with a single pull of the trigger. Despite this arrest, he was arrested just over two months later for possessing a loaded semiautomatic firearm with a 26-round magazine. And despite both of those arrests, he possessed a firearm again the following year, this time with a pistol with a high-capacity magazine, a round in the chamber, and an illegal aftermarket "auto sear" device, which converted the pistol to fire as a fully automatic machinegun. In addition, officers located in his bedroom indicia of his membership in Oakland's F.E. gang.

The government also recognizes the mitigating factors addressed in the PSR. Lopez's mother was only 16 years old at the time of Lopez's birth, and his family moved often due to neighborhood violence. PSR ¶ 55. At the age of 14, Lopez endured unspeakable trauma when his mother died in his arms following a drive-by shooting. *Id.* at ¶ 57. Despite his young age, Lopez subsequently assumed

responsibility for the care of his younger sisters, and Lopez began to rely on drugs to escape his pain. *Id*. at ¶¶ 58-59.  Around this time, Lopez began to associate with gang members, who, according to Lopez, took him in following his mother's death.  *Id.* at ¶ 60.  The government acknowledges that events and circumstances outside Lopez's control—including his mother's murder—increased the likelihood that he would engage in the criminal conduct at issue in this case and that resulted in his earlier convictions.  The government has accounted for this mitigation in arriving at its sentencing recommendation.

However, there are also aggravating factors.  Most concerningly, there is little indication that the prospect of a significant prison sentence affected Lopez's decision-making, including his decision to continue to associate with alleged poor influences.  Neither his three prior felony convictions (and multiple other arrests) for gun crimes; nor his indictment for three separate violations of federal gun laws; nor his knowledge that local and federal law enforcement were closely monitoring his social media activity, that a federal judge had specifically ordered him not to associate with known gang members, and that his performance while on pretrial release would likely affect the length of his custodial sentence, was sufficient to deter Lopez from committing allegedly criminal conduct and repeatedly violating court orders.  Instead, even after multiple pretrial services violations memoranda, one of which followed an arrest, Lopez appeared to have concluded that—rather than cutting off his associations with other gang members—he needed to become more deceptive and, in his own words, "move strategic."  *See* Exhibit 1, page 8.

While the government sympathizes with the defendant for the trauma he has endured, which undoubtedly has affected his course in life and which the government has accounted for in making its recommendation, Lopez's repeated possession of loaded firearms, including in furtherance of other felonies, proves that he presents a serious danger to the public.  And further, Lopez's actions provide little indication that he intends to change his conduct or his associations; to the contrary, neither his prior convictions nor the looming prospect of incarceration have served to deter Lopez from continuing to violate judicial orders.  Taking into account the factors to be considered under 18 U.S.C. § 3553, a sentence of 84 months—the low end of the applicable guidelines range—is appropriate.

UNITED STATES' SENTENCING MEMO.                7
4:25-cr-00109 HSG

## CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Lopez to 84 months in prison followed by a three-year term of supervised release.

DATED:  July 1, 2026                                       Respectfully submitted,

                                                            CRAIG H. MISSAKIAN
                                                            United States Attorney

                                                            _____/s/_____
                                                            JONAH P. ROSS
                                                            Assistant United States Attorney